## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**DEC 1 6 2003**

Michael N. Milby
Clerk of Court

| | |
|---|---|
| **DIRECTV, Inc.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **V.** § | No. CIV. **B-03-052** |
| § | |
| **TONY ADAME aka ANTHONY T.** § | |
| **ADAMS aka TONY ADAMS, CESAR** § | |
| **ARCOS, PAUL A. DAVIS, RODNEY D.** § | |
| **MOORE, and YESENIA SALAZAR** § | |
| § | |
| **Defendants.** § | |

## PLAINTIFF DIRECTV, INC.'S FIRST AMENDED COMPLAINT

Plaintiff, DIRECTV, Inc. ("DIRECTV"), by its attorney, complaining of the Defendants herein respectfully sets forth and alleges, upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1.      This lawsuit involves the surreptitious possession and use of illegal devices and equipment designed to intercept and decrypt DIRECTV's protected satellite communications, ultimately allowing for the free viewing of television programming. Federal communication and state laws prohibit the assembly, distribution, possession and use of the devices and equipment in question.  DIRECTV brings this lawsuit seeking damages and injunctive relief against the defendants for the assembly, distribution, possession and use of illegitimate devices primarily designed to gain unauthorized access to its satellite communication signals.

## II. FACTS REGARDING DIRECTV'S BUSINESS OPERATIONS & SUPPORTING SATELLITE PIRACY CLAIMS

2.      DIRECTV is a California-based company in the business of distributing satellite television broadcasts throughout the United States.  Over the company's life, DIRECTV has invested billions of dollars to develop a satellite system capable of transmitting various digitized video and audio signals to homes and businesses nationwide to be used for entertainment purposes (the "Satellite Programming"). DIRECTV relays digital signals from within the United States up to satellites hovering thousands of miles above Earth.  Those signals are then broadcast back to Earth. DIRECTV's Satellite Programming is received through the use of a fixed outdoor satellite dish ("Satellite Dish") designed to capture satellite signals.  The Satellite Dish is connected by cable to an indoor satellite receiver ("Satellite Receiver") which is then

connected by cable to a television monitor.

3.      While the signal is beamed from space to various areas and can be received by installing a Satellite Dish, the signal is not usable without paying DIRECTV a fee to use its television broadcast services.  To prevent the unauthorized reception and use of

holds a computer-type chip that stores and applies the information necessary to unscramble the satellite signals being received through the Satellite Dish. When properly operated, access cards can be electronically programmed by DIRECTV to close or open television channels. It is, however, the programmable nature of these access cards that is the primary basis for this dispute.

4.     Once a DIRECTV customer pays a subscription fee, DIRECTV electronically directs the Access Card to unscramble portions of the satellite signal allowing customers to view programs on their televisions and/or listen to certain high quality audio programs communicated by satellite. Through the Access Card, DIRECTV can provide many different levels of service to individual customers. Each customer usually pays for the service on a monthly basis. In addition to the programming packages paid for on a monthly basis, certain DIRECTV satellite broadcasts, such as professional sports packages and pay-per-view movies, remain blocked and can be spontaneously purchased on a per-show or per-package basis using the customer's remote control or through a telephone call to DIRECTV. The Access Card records those purchases.

5.     DIRECTV's main revenue source is subscriptions paid by properly authorized users of its signals; obviously then, DIRECTV has a significant interest in preventing the unauthorized receipt and use of DIRECTV Satellite Programming. Despite the encryption technology used to protect the DIRECTV signal, there are many individuals within the United States and surrounding foreign countries involved in the development of devices and equipment (including the illegal programming of valid Access Cards) used to surreptitiously pirate DIRECTV's signals (collectively referred to

as "Pirate Access Devices"). The use of such Pirate Access Devices commonly provides the user with access to all of DIRECTV's Satellite Programming with no payment to the company.

6.      Defendants in this action are residents of the State of Texas. Upon information and belief, each defendant has purchased and used illegal Pirate Access Devices that are designed to permit viewing of DIRECTV's television programming without authorization by, or payment to, DIRECTV.

### *DIRECTV Obtained Evidence Related to Distributers*

7.      On or about May 25, 2001, DIRECTV executed Writs of Seizure, with the assistance of local law enforcement, at the mail shipping facility used by several major distributors of Pirate Access Devices, including, among others, Vector Technologies, DSS-Stuff, Shutt, Inc., Intertek, Whiteviper and DSS-Hangout (collectively referred to hereinafter as the "Fulfillment Pirate Group"). During and subsequent to the raids, DIRECTV obtained a substantial body of shipping records, email communications, credit card receipts and other records. Each of the records confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming. More pertinently, the records evidence each defendant's purchases of Pirate Access Devices from a member of the Fulfillment Pirate Group. In reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against the defendants.

8.      On or about December 11, 2001, state and local law enforcement officers, with the assistance of DIRECTV personnel, executed search warrants upon Chris and Kathy Schultz, doing business as Mountain Electronics, aka "Mountainelectronics.net." The Schultz' were physically located in Arizona, but, due to the expansive reach of internet sales, Mountain Electronics was able to conduct business nationwide and across many countries. Mountain Electronics' business enterprise focused on distributing electronic devices primarily designed for the surreptitious interception of satellite communications broadcast by DIRECTV.

On or about April 18, 2002, a second raid was conducted upon the Schultz' and Mountain Electronics, resulting in the arrest of the Schultz' and the seizure of additional records and equipment. The raids revealed information related to Mountain Electronics and its customers. DIRECTV obtained various business records evidencing the ongoing illegitimate enterprise, including orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card receipts and customer lists. Each record confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming.  Moreover, the records plainly evidenced that Mountain Electronic provided its devices to actively program and reprogram DIRECTV Access Cards at the request of customers eager to continue illegal access to DIRECTV's television programming without payment to DIRECTV.

Mountain Electronics customers ordinarily placed orders over a website operated by the Schultz', named "Mountainelectronics.net."  Pertinently, the business records

obtained in the raid evidence each Defendant's purchases of Pirate Access Devices from Mountain Electronics, and in reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against the Defendant for the purchase, possession, importing, modification, manufacture, assembly and/or use of Pirate Access Devices.

9.    For each of the raids mentioned above, the defendants' activities violate federal telecommunication and wiretapping laws and state statutory and common law. As a result of the defendants' decisions to obtain Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV brings this action seeking damages and injunctive relief against the defendants' continued possession and/or use of Pirate Access Devices.

## III. JURISDICTION

10.    DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

11.    This lawsuit is brought pursuant to several federal statutes prohibiting the interception of satellite communications, including the Cable Communications Policy Act of 1984, (47 U.S.C. §§ 521, *et seq.*) (the "Communications Act"), and the Electronic Communications Policy Act of 1986, (18 U.S.C. § 2510, *et. seq.*), for violations of Texas law (TEX. CIV. PRAC. & REM CODE § 123, *et. seq.*), and as an action for injunctive relief and damages for the improper receipt, transmission, and use of satellite programming signals. This Court has jurisdiction of the subject matter to this action under 28 U.S.C. § 1331, pursuant to which the United States District Courts have original jurisdiction of all

civil actions arising under the Constitution, laws or treaties of the United States. Moreover, this Court has supplemental jurisdiction over DIRECTV's state law claims pursuant to 28 U.S.C. § 1367.

12.    This Court has personal jurisdiction over the parties in this action.  The activities over which DIRECTV complains and giving rise to this action took place in the State of Texas; more particularly, each of the defendants' acts of violating federal laws and DIRECTV's proprietary rights as distributor of the satellite programming transmission signals took place within the Southern District of Texas.  Further, upon information and belief, each defendant resides within the State of Texas; thus, this Court has personal jurisdiction over each defendant.

## IV. <u>VENUE</u>

13.    Venue is proper in this the United States District Court for the Southern District of Texas under 28 U.S.C. §§ 1391(b) as this action arises under the laws of the United States and each defendant resides within the State of Texas.  Moreover, a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas (28 U.S.C. § 124).

## V. <u>PARTIES</u>

14.    DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

15.    Plaintiff, DIRECTV, is at all times relevant hereto a corporation incorporated under the laws of the State of California.  As a major distributor of satellite television programming, DIRECTV has a significant interest in maintaining and securing

the integrity of its satellite transmissions of television programming and in prohibiting the unauthorized reception and use of the same.

16.    Defendant, Tony Adame aka Anthony T. Adams and aka Tony Adams ("Defendant Adams"), resides in Harlingen, Texas. Upon information and belief, Defendant Adams purchased one or more Pirate Access Devices from the Fulfillment Pirate Group, White Viper and/or Mountain Electronics. Defendant Adams placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Specifically, Defendant Adams made the following purchases:

(a)    On or about September 13, 2000, Defendant Adams purchased a Device from Whiteviper, consisting of one "Viper Smart Card Reader/Writer". The smart card programmer is primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. On that same day Defendant Adams purchased a Device from Whiteviper consisting of one "Combo Viper Reader/Writer & Wildthing Super Unlooper with Wildthing".
The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices.

(b)    On or about March 1, 2001, Defendant Adams purchased ten printed circuit board devices each invoiced as a "Terminator Boot Loader Board." Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming,

providing Defendant access to DIRECTV programming without payment. The bootloaders were shipped from the Fulfillment Pirate Group to Defendant Adams at his address in Harlingen, Texas.

(c)   On or about March 21, 2001, Defendant Adams purchased two printed circuit board devices each invoiced as a "Terminator Boot Loader Board." Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming, providing Defendant access to DIRECTV programming without payment. The devices were shipped from the Fulfillment Pirate Group to Defendant Adams at his address in McAllen, Texas.

(d)   On or about March 22, 2001, Defendant Adams purchased one printed circuit board device invoiced as a "Terminator Boot Loader Board." from the Fulfillment Pirate Group. Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming, providing Defendant access to DIRECTV programming without payment. The device was shipped from the Fulfillment Pirate Group to Defendant Adams at his address in McAllen, Texas.

(e)   On or about March 26, 2001, Defendant Adams purchased two Pirate Access Devices from the Fulfillment Pirate Group, each consisting of a printed circuit board device and invoiced as a "Vector Smart Card Emulator," designed specifically to permit the surreptitious interception of DIRECTV Satellite Programming. The devices were sent through the mail to Defendant Adams in McAllen, Texas.

(f)   On or about May 15, 2001, Defendant Adams purchased four printed circuit board devices each invoiced as a "Terminator Bootloader." from Fulfillment Pirate

Group. Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming, providing Defendant access to DIRECTV programming without payment. The devices were shipped from the Fulfillment Pirate Group to Defendant Adams at his address in McAllen, Texas.

(g)   On or about May 18, 2001, Defendant Adams purchased a Pirate Access Device from the Fulfillment Pirate Group, consisting of a computer chip invoiced as a "Blank Atmel Chip." The Atmel chip is specifically designed to be incorporated into a device used to reprogram DIRECTV Access Cards, generically called an "unlooper." The device was shipped from the Fulfillment Pirate Group to Defendant Adams at his address in McAllen, Texas.

(h)   On or about May 30, 2002, Defendant Adams purchased twenty devices each consisting of "bootloaders," from Mountain Electronics. Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming, providing Defendant access to DIRECTV programming without payment. The devices were shipped to Defendant Adams at Defendant's address in Harlingen, Texas.

17.   Defendant, Cesar Arcos ("Defendant Arcos"), resides in Brownsville, Texas. Beginning on or about April of 2001, Defendant Arcos purchased several Pirate Access Devices from the Fulfillment Pirate Group. Defendant Arcos placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about April 12, 2001, Defendant Arcos purchased two printed circuit board devices each invoiced as a "Terminator Emulator," designed specifically to permit the surreptitious interception of

DIRECTV Satellite Programming.  Additionally, on that same day, Defendant Arcos purchased a printed circuit board invoiced as a "Terminator SU2 Unlooper No/Case," more commonly known as and used as an "unlooper."  The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices.  Finally, on that same day, Defendant Arcos purchased a printed circuit board invoiced as a "PS2 Plus Bootstrap Unlooper-SU2," more commonly known as and used as an "unlooper."  The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices.  The devices were sent through mail to Defendant Arcos in Brownsville, Texas.

        18.    Defendant, Marcos Camacho ("Defendant Camacho"), resides in Harlingen, Texas.  Beginning on or about March of 2001, Defendant Camacho purchased several Pirate Access Devices from the Fulfillment Pirate Group.  Defendant Camacho placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier.  Specifically, Defendant

Camacho made the following purchases:

        (a)    On or about March 14, 2001, Defendant Camacho purchased a device invoiced as a "Vector Super Unlooper with SU2 Code."  The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices. Additionally, on

that same day, Defendant Camacho purchased a printed circuit board device invoiced as a "Vector Smart Card Emulator," designed specifically to permit the surreptitious interception of DIRECTV Satellite Programming. The devices were sent through the mail to Defendant Camacho in Harlingen, Texas.

(b)    On or about March 23, 2001, Defendant Camacho purchased a device invoiced as a "Vector Super Unlooper with SU2 Code." The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices. Additionally, on that same day, Defendant Camacho purchased a printed circuit board device invoiced as a "Vector Smart Card Emulator," designed specifically to permit the surreptitious interception of DIRECTV Satellite Programming. The devices were sent through the mail to Defendant Camacho in Harlingen, Texas.

19.    Defendant, Paul A. Davis ("Defendant Davis"), resides in Brownsville, Texas. On or about May of 2001, Defendant Davis purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Davis placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about May 21, 2001, Defendant Davis purchased a device invoiced as a "Vector Fusion Multi-Purpose," more commonly known as an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain

software further permitting the illegal programming of valid DIRECTV access devices. The device was shipped to Defendant Davis to his address in Brownsville, Texas.

20.    Defendant, Rodney D. Moore ("Defendant Moore"), resides in South Padre Island, Texas.  Upon information and belief, Defendant Moore purchased one or more Pirate Access Devices from the Fulfillment Pirate Group.  Defendant Moore placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier.  Specifically, on or about August 2, 2000, Defendant Moore purchased a printed circuit board device invoiced as a "WT2." The package consisted of an unlooper.  The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software permitting the illegal programming of valid DIRECTV access devices. The device was shipped from the Fulfillment Pirate Group to Defendant Moore at his address in South Padre I sland, Texas.

21.    Defendant, Yesenia Salazar ("Defendant Salazar"), resides in Mission, Texas.  On or about August of 2000, Defendant Salazar purchased one or more Pirate Access Devices from the Fulfillment Pirate Group.  Defendant Salazar placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier.  Specifically, on or about August, 18, 2000, Defendant Salazar purchased a device invoiced as an "X-Terminator Unlooper w/case." The package consisted of an unlooper.  The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use

with "X Code" further permitting the illegal programming of valid DIRECTV access devices. The device was shipped to Defendant Salazar to her address Mission, Texas.

22.    Defendants are sometimes hereinafter collectively referred to as "Defendants."

23.    Upon information and belief, Defendants received Pirate Access Devices through various mail sources, effectively importing such illegal devices into the State of Texas; each Defendant has a reason to know that such device is used to illicitly decrypt Satellite Programming. Upon information and belief, Defendants displayed Satellite Programming and such Satellite Programming was displayed without authorization from DIRECTV. Importantly, Defendants' possession and use of Pirate Access Devices provides them access to all television programs transmitted by DIRECTV, including access to all pay-per-view movies, boxing and other special programs, and sports programming at all times. The value of the programs that Defendants were capable of viewing without authorization may easily reach thousands of dollars in a single year.

24.    On information and belief, DIRECTV alleges that Defendants received the Satellite Programming by means including but not limited to: (a) maintaining Satellite Dishes capable of receiving satellite programming on television monitors and further maintaining electronic devices which enable them to unscramble, receive, and exhibit encrypted Satellite Programming transmissions without authorization; and/or (b) by such other means to effectuate the unauthorized reception of the Satellite Programming which are unknown to DIRECTV and known only to Defendants.

25.    More importantly, upon information and belief certain of the Defendants may have been engaged in an enterprise to distribute and/or resell the devices purchased from the Fulfillment Pirate Group.  Upon information and belief, these Defendants profited from their enterprise.

## VI. DISCOVERY OF ILLEGAL CONDUCT

26.    DIRECTV devotes significant resources to preventing the unauthorized reception of its Satellite Programming and identifying persons or businesses engaged in such illegal activity.  Despite these efforts, DIRECTV first learned of Defendants' identities and their respective involvement in pirating Satellite Programming after the raids occurring in May of 2001.

## VII. CAUSES OF ACTION

### Count 1 - Damages for Violations of Cable Communications Policy Act
### (47 U.S.C. § 605(e)(3)(C))

27.    DIRECTV incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

28.    DIRECTV alleges on information and belief, that Defendants effected unauthorized interception and receipt of Satellite Programming through use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the Satellite Programming where Defendants are located, or by such other means which are unknown to DIRECTV and known only to Defendants.

29.    Each Defendant's acts violate federal law.  Defendants, illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the

unauthorized interception, reception, or exhibition of Satellite Programming transmitted by DIRECTV. Moreover, upon information and belief, Defendants divulged or published the existence contents, substance, purport, effect or meaning of such satellite communications. Further, upon information and belief, Defendants used such communications for their own benefit or for the benefit of others who were not entitled to such communications. Each of these acts is a practice prohibited by 47 U.S.C § 605(a).

30.    DIRECTV is a person aggrieved by the Defendants' violations of 47 U.S.C. § 605 and is authorized to institute this action against each of the Defendants pursuant to 47 U.S.C. § 605 (e)(3)(A).

31.    Defendants' violations of 47 U.S.C. § 605 have injured and will continue to injure DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming as DIRECTV has been deprived of the benefit of subscribers to the Satellite Programming. DIRECTV is entitled to costs, reasonable attorneys' fees, actual damages suffered, and profits obtained by Defendants attributable their illegal conduct.

32.    Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 nor more than $10,000 for each violation of 47 U.S.C. § 605(a).

### Count 2 - Damages for Violations of 18 U.S.C. § 2511

33.    DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

34.    For further cause of action, DIRECTV alleges that Defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic

communications from DIRECTV.  Defendants further disclosed or endeavored to disclose to others the contents of electronic communications knowing, or having a reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.  Upon information and belief, Defendants further intentionally used or endeavored to use the contents of electronic communications knowing, or having reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C § 2511.

35.    DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2511.

36.    Due to Defendants' wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV and the profits made by each Defendant as a result of his conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendants acted in violation of 18 U.S.C. § 2511.

### Count 3 - Damages for Possession, Manufacture, and/or Assembly of Electronic, Mechanical or Other Device or Equipment (18 U.S.C. § 2512)

37.    DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

38.    By way of its third cause of action, DIRECTV alleges that Defendants possessed, manufactured, and/or assembled an electronic, mechanical or other device knowing, or having a reason to know, that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or electrical

communications and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce. More particularly, Defendants themselves, or someone at their direction, sent and/or received Pirate Access Devices by means of the United States Postal Service or commercial mail carrier.

39.     DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2512.

40.     Due to Defendants' wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV as a result of Defendants' conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendants acted in violation of 18 U.S.C. § 2512.

### Count 4 - Damages for Willful Assembly or Modification
### of Devices or Equipment
### (47 U.S.C. § 605(e)(4))

41.     DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

42.     Upon information and belief, Defendants knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily in the assistance of the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or is intended for any other prohibited activity. Upon information and belief, Defendants actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV Satellite Programming. Further, by removing and inserting Pirate Access Devices and/or inserting

illegally programmed Access Cards into valid DIRECTV Receivers, Defendants engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming.

43.     Such conduct by each Defendant violates 47 U.S.C § 605(e)(4) and such activity entitles DIRECTV to statutory damages in a sum not less than $10,000 or more than $100,000, as the Court considers just for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

44.     DIRECTV is a person aggrieved by the Defendants' independent violations of 47 U.S.C. § 605 and is authorized to institute this action against the Defendants pursuant to 47 U.S.C. § 605 (e)(3)(A).

### Count 5 - Civil Conversion

45.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

46.     By virtue of the conduct set forth above, Defendants have unlawfully converted DIRECTV's property for their own commercial use and benefit.

47.     Such conversion was done intentionally and wrongfully by Defendants to deprive DIRECTV of its proprietary interests and for Defendants' direct benefit and advantage.

48.     Due to Defendants' wrongful conversion of DIRECTV Satellite Programming, DIRECTV suffered damages.

## Count 6 – Interception of Communication
### (TEX. CIV. PRAC. & REM. CODE § 123.001, *et. seq.*)

49.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

50.     DIRECTV transmits satellite communications in part by wire or cable. More specifically, the Satellite Dish, receivers, and television necessary to utilize DIRECTV's Satellite Programming are connected by wire and cable. Finally, DIRECTV's Satellite Programming contains information that is obtained and/or perceived by aural acquisition, particularly including all audio communication services that accompany video transmissions.

51.     Upon information and belief, Defendants acquired and/or used Pirate Access Devices to intercept, or attempt to intercept, DIRECTV's Satellite Programming information constituting an extraordinary use of satellite and television viewing equipment. Defendants' conduct violates Chapter 123 of the Texas Civil Practices and Remedies Code. As a result of Defendants' conduct, DIRECTV may obtain statutory damages of $10,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs.

## VIII. REQUEST FOR INJUNCTIVE RELIEF

52.     DIRECTV realleges and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

53.     DIRECTV further alleges that unless restrained by this Court, the Defendants will continue to receive, intercept, transmit, and exhibit the Satellite Programming, illegally and without authorization, in violation of 47 U.S.C. § 605.

54.    The violations of 47 U.S.C. § 605 set forth above have caused and will continue to cause DIRECTV irreparable harm.

55.    DIRECTV cannot practicably determine the loss of subscribers and lost revenues resulting from the Defendants' unlawful conduct.  In addition to diminishing DIRECTV's revenues, the Defendants' unlawful conduct injures DIRECTV's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality programming thereby impairing DIRECTV's ability to enhance its future growth and profitability.  DIRECTV has no adequate remedy at law to redress the violations set forth above.

56.    Further, DIRECTV is entitled to preliminary and other equitable or declaratory relief as may be appropriate under the circumstances in accordance with 18 U.S.C. § 2520(b)(1).  DIRECTV requests that Defendants be directed to cease the use of any and all Pirate Access Devices, relinquish all such devices to DIRECTV, and not engage in such conduct in the future.

## IX. **PRAYER**

WHEREFORE, Plaintiff, DIRECTV, INC., prays that this Court enter judgment in its favor and against Defendants in the form as follows:

a.    Declare that Defendants' assembly, modification, distribution, and possession of illegal devices or equipment, unauthorized interception, reception, and exhibition of DIRECTV's electronic communications, or their assistance in the performance of such unauthorized actions, is a violation of 47 U.S.C. § 605, 18 U.S.C. §§ 2511 & 2512, and TEX. CIV. PRAC. & REM. CODE § 123.002.

b.    Award DIRECTV statutory damages in the amount of $10,000.00 for each violation of 47 U.S.C. § 605, plus an additional $100,000.00 for each

violation pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendants' violations of 47 U.S.C. § 605;

c.     Alternatively, award DIRECTV statutory damages in the amount of the greater of $10,000 or $100 per day for each day Defendants violated 18 U.S.C. § 2511 and/or § 2512, or alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendants' violations of 18 U.S.C. §§ 2511 or 2512;

d.     Alternatively, award DIRECTV statutory damages of $10,000 for each violation of TEX. CIV. PRAC. & REM. CODE § 123.002;

e.     In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), enjoin Defendants, and all persons in active concert or participation with any of them, from (i) possessing illegal access cards or other illegal devices or equipment (ii) interfering with DIRECTV's proprietary rights, (iii) intercepting, receiving, divulging, or displaying DIRECTV's Satellite Programming without prior written consent of DIRECTV; and (iv) acting in further violation of the above-described statutes;

f.     That this Court award DIRECTV punitive damages as provided by statutory law;

g.     That this Court award DIRECTV its costs, including reasonable attorneys' fees, pre-judgment and post-judgment interest, and

h.     Such other relief to which DIRECTV may be entitled.

DATED this 9th day of December, 2003.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
Lecia L. Chaney
State Bar No. 00785057
Fed. I.D. #16499
**Christopher E. Moore**
State Bar No. 24011075
Fed. I.D. #

1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522
Telephone:  (956) 542-7441
Telefax     :  (956) 541-2170

OF COUNSEL:

GREER, HERZ & ADAMS, LLP

**Joe A.C. Fulcher**
Federal ID No. 14126
St. Bar No. 07509320
**Kelly-Ann F. Clarke**
Federal ID No. 27195
St. Bar No. 24027929
**Robert A. Swofford**
Federal ID No. 19403
St. Bar No. 00791765
**Joseph R. Russo, Jr.**
Federal ID No. 22559
St. Bar No. 24002879
One Moody Plaza, 18th Floor
Galveston, Tx  77550
(409) 797-3200 (telephone)
(409) 766-6424 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record, to-wit:

John T. Blaylock
2255 Barnard, Ste. C
Brownsville, Tx  78520
Attorney for Tony Adame

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the 9th day of December, 2003.

Leola L. Chaney